## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN H. NEIMAN | : | 1:16-cv-1418 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| HUDSON REAL ESTATE ADVISORS, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM</u>

### October 17, 2016

Plaintiff Steven Neiman ("Plaintiff" or "Neiman") brings the above-captioned action asserting two counts of breach of a promissory note, and, in the alternative, claims of unjust enrichment and promissory estoppel against Defendant Hudson Real Estate Advisors, LLC ("Hudson").  (Doc. 1).  Presently before the Court is Hudson's Motion to Dismiss for lack of personal jurisdiction, or in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a).  (Docs. 10, 15 & 16).[1]  The Motion has been fully briefed (docs. 10-3, 11, 12) and is therefore ripe for our review.  For the reasons that follow, Hudson's Motion to Dismiss shall be denied.  Hudson's Motion to Transfer Venue to the Southern District of Florida shall be granted.

---

[1]     Due to a clerical error, Hudson's Motion was refiled several times and thus appears at multiple locations on the docket.

## I.   FACTUAL AND PROCEDURAL HISTORY

In accordance with the standard of review applicable to a motion to dismiss, the following facts regarding the claim itself are derived from Plaintiff's Complaint. (Doc. 1).  However, because a challenge of personal jurisdiction under Rule 12(b)(2) allows the parties to produce competent evidence to either establish or refute jurisdiction, *see Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330-331 (3d Cir. 2009), facts regarding jurisdiction are derived from the Plaintiff's Complaint (Doc. 1) as well as the briefs (Docs. 10-3, 11, 12), and evidence attached to the filings.

Plaintiff Steven Neiman is a resident of Pennsylvania.  (Doc. 1, ¶ 1). Neiman is also a partial owner of a property in Fort Lauderdale, Florida, which he visits sporadically.  (Doc. 11-1, ¶ 18).  Hudson is a Florida limited-liability corporation with its principal place of business in Delray Beach, Florida.  (*Id*., ¶ 2). On or about October 16, 2013, Neiman agreed to loan Hudson a sum of $200,000 plus interest pursuant to a promissory note (the "October Note"), to be repaid in full on February 1, 2015, together with any accrued and outstanding interest.  (*Id*., ¶¶ 8-10).  On or about December 16, 2013, Neiman further agreed to loan Hudson a sum of $100,000 plus interest pursuant to a second promissory note (the "December Note").  (*Id*., ¶¶ 25-27).  The December Note was to be repaid with interest on or before January 16, 2014.  (*Id*., ¶ 27).  Though the Notes do not

specify the purpose of the loans, through affidavit Hudson indicates that its only business venture is in the redevelopment of a parcel of land known as Swinton Commons and adjacent property in Delray Beach, Florida. (Doc. 10-3, p. 6 (citing Doc. 10, ¶¶ 6, 9)).

Neiman now alleges that Hudson has failed to repay the Notes. According to Neiman, as of July 1, 2016, Hudson owed Neiman $244,926.66 on the October Note and $146.952.05 on the December Note. (*Id.*, ¶¶ 22, 36).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C. S.A. § 5322(b).

Due process requires that a defendant have sufficient "minimum contacts" with the state in which the court sits "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "Such minimum contacts are established when there is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within

the forum State, thus invoking the benefits and protections of its laws.'" *Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70, 74 (3d Cir. 2015) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  When determining whether personal jurisdiction exists, the court must resolve the question based on the circumstances that the particular case presents.  *Burger King*, 471 U.S. at 485.

A court may exercise personal jurisdiction based on a defendant's general or specific contacts with the forum.  "General jurisdiction is based upon the defendant's continuous and systematic contacts with the forum."  *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (internal quotations omitted).  Specific jurisdiction is appropriate only if the "plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably expect being haled into court' in that forum."  *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Specific jurisdiction is established where "(1) the defendant purposely directed his activities at the forum state; (2) the plaintiff's claim arises out of and relates to at least one of those specific activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice."  *Isaacs*, 608 F. App'x at 74.

In deciding a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true.  *Eurofins Pharma US Holdings v.*

*BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).  However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330-331 (3d Cir. 2009).  Once the plaintiff makes out a prima facie case in favor of personal jurisdiction, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477.

## III.   ANALYSIS

Neiman first argues that by engaging in business with a Pennsylvania resident, Hudson has availed itself of Pennsylvania such that specific jurisdiction over Hudson is appropriate.  (Doc. 11, p. 9).  Neiman further argues that the plain language of the December Note includes a choice of forum clause such that Hudson has consented to jurisdiction in "any federal court."  (*Id*.).  Finally, Neiman argues that to transfer this case to Florida would impose a "significant burden," as Neiman is "currently facing a prolonged recovery from major cardiac surgery."  (*Id*.).  Neiman indicates that he is unable to drive or fly, and that he may undergo major orthopedic surgery at the end of this year.  (*Id*., p. 8).  We first consider the forum selection clause in the December Note in conjunction with Hudson's contacts in Pennsylvania.

**A.    Jurisdictional Consent and Venue Selection Clause**

Both parties point to a provision in the December Note in support of their

opposing arguments related to jurisdiction and venue.  The provision reads:

> THE UNDERSIGNED HEREBY CONSENTS AND SUBJECTS ITSELF
> TO THE JURISDICTION OF THE COURTS OF THE STATE OF
> FLORIDA AS WELL AS TO ANY FEDERAL COURT, AND WITHOUT
> LIMITING THE GENERALITY OF THE FOREGOING, TO THE VENUE
> OF SUCH COURTS IN MIAMI-DADE COUNTY, FLORIDA.

(Doc. 10-3, p. 7 (citing to Doc. 1-2, p. 8)).  The Note also includes a choice-of-law

provision in favor of the state of Florida.  (Doc. 1-2, p. 8).  The Note is

undersigned by Andrew Greenbaum, President of Hudson Real Estate.

Hudson interprets this provision to have meant that it consents to the

jurisdiction of any federal court *within the state of Florida*, and that furthermore

the parties agreed to a venue in Miami-Dade County.  (Doc. 10-3, p. 7).  Neiman,

however, argues that Hudson consented to the jurisdiction of any federal court

anywhere in the United States.  (Doc. 1, ¶ 7).[2]  Both parties direct the Court to

consider *Resolution Trust Corp. v. Miller*, No. CIV. A. 92-6959, 1993 WL 306106,

for their opposing arguments regarding whether Hudson consented to the

jurisdiction of "any federal court."

---

[2]    Neiman further argues that though Hudson may have consented to venue in Miami-Dade
County, venue is also proper in the Middle District under 28 U.S.C. Section 1391(b)(2).  (Doc.
11, p. 19).  This issue shall be addressed more fully below.

In *Miller*, the District Court for the Eastern District of Pennsylvania considered whether it had personal jurisdiction over a couple, the Millers, who had entered into a loan agreement with a bank located in Pennsylvania, sent payments to that bank, and submitted to a Pennsylvania choice-of-law provision. *Miller*, 1993 WL 306106, at *4-5. The court emphasized that "[s]tanding alone, the Millers' agreement to make loan repayments to a Pennsylvania bank and their consent to a Pennsylvania choice-of-law provision . . . would not constitute sufficient forum contacts to sustain personal jurisdiction." *Id*. at *4. However, the court also noted that the Millers had signed a cognovit note, or consent provision, to consent to the jurisdiction of "any court of record." In considering the cognovit note, the court expressed serious "doubts that a broad clause providing that a borrower consents to the jurisdiction of 'any court of record' would support jurisdiction in a forum with no rational relationship to the loan transaction." *Id*. at *5. The court went on to reason, however, that "[i]n the instant case, . . . there is a rational relationship between the loan transaction and Pennsylvania, which also is a likely and logical place where the Millers could anticipate [the bank] having judgment entered." *Id*. In *Miller*, the court ultimately ruled that a D.C. district court's determination that personal jurisdiction existed over the Millers in Pennsylvania was not implausible, and thus, jurisdiction was appropriate.

7

Though the circumstances of *Miller* are not identical to those presented here, we find the court's rationale in *Miller* to be persuasive.  As Hudson points out, under Neiman's interpretation, it is likely that such a broad forum selection clause as that which Hudson agreed to would be unenforceable had Neiman attempted to subject Hudson to the jurisdiction of a federal court in a state with absolutely no relations to the instant transaction.  (Doc. 10-3, p. 9).  But, as in *Miller*, here there are ties to Pennsylvania such that the Commonwealth does bear a rational relationship to the situation at hand.  Though standing alone, it is likely that Hudson's actions do not give rise to sufficient minimum contacts to support an exercise of personal jurisdiction, we need not engage in such an analysis here. Rather, it is sufficient to conclude that the forum selection clause and Hudson's actions taken in combination create sufficient awareness such that Hudson consented to jurisdiction in Pennsylvania.

To that end, we briefly describe Hudson's contacts with Pennsylvania.  The record indicates that even if Hudson had not known that Neiman was based in Pennsylvania when it reached out to Neiman to propose the loan, Hudson was made aware that Neiman was a Pennsylvania resident by the terms of the October Note.  Furthermore, both the October and December Notes listed Neiman's address in Mechanicsburg, Pennsylvania, and throughout the course of the execution of repayment on the loans, to the extent that such repayment occurred, Hudson sent

payments to Neiman's bank in Pennsylvania. Hudson also reached out to contact Neiman, albeit through technological instead of physical means, in Pennsylvania to negotiate the terms of the loan. Though representatives of Hudson never physically came to Pennsylvania, the Third Circuit has recently observed that "[i]n modern commercial business arrangements, . . . communication by electronic facilities, rather than physical presence, is the rule. Where these types of long-term relationships have been established, actual territorial presence [in the forum state] becomes less determinative." *General Electric Co. v. Deutz AG*, 270 F.3d 144, 151 (3d Cir. 2001) (finding personal jurisdiction over a German company that had deliberately assumed long-term obligations with a resident in the forum state).

We conclude that Hudson had sufficient knowledge of Neiman's status as a Pennsylvania resident such that, combined with the forum selection clause in the December Note, Hudson could reasonably have foreseen being "haled into court" here.[3] In so concluding, we also note that Hudson is not an individual borrower but a sophisticated business entity, such that they were more likely to be cognizant of these factors.[4] For all of the reasons set forth, personal jurisdiction over Hudson is appropriate.

### B. Venue

---

[3] *See Vetrotex Certainteed Corp.*, 75 F.3d at 151.
[4] The court in Miller similarly noted that as an attorney, Mr. Miller was a sophisticated defendant, likely to be aware of the meaning behind the terms of the cognovit. *Miller*, 1993 WL 306106, at *4 ("Mr. Miller is an attorney and presumably understood the terms of the note he was executing.").

We turn now to considerations of venue.  There is a venue selection clause contained in the December Note, by which Hudson "consents and subjects" itself to the venue of "courts in Miami-Dade County."  Though Neiman acknowledges that Hudson consented to a venue of Miami-Dade County, Florida, he argues that venue is appropriate in the Middle District under 28 U.S.C. Section 1391(b)(2) as "a substantial portion of the events and omissions giving rise to the claims" occurred in Pennsylvania.  (Doc. 11, p. 19).  For the following reasons, we disagree.

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1391(b)(2) provides that, in diversity cases such as this, venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2). "[T]he current statutory language . . . favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial.'  Events or omissions that might only have some tangential connection with the dispute are not enough."  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

"Although the statute no longer requires a court to select the "best" forum, the weighing of "substantial" may at times seem to take on that flavor." *Id.* This requirement is "intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Downs v. Andrew*s, Civ. Action No. 13-5788, 2014 WL 7235841, at *6 (quoting *Cottman Transmission Sys.*, 36 F.3d at 294)).

While courts in the past have held that the location of one party while the majority of contract negotiations took place may constitute a proper venue, *see Downs*, 2014 WL 7235841, at *6 (holding that venue was appropriate in a location where "although the alleged misconduct did not take place in this district, a substantial portion of the underlying contract negotiations did"), here additional substantial events giving rise to the claim took place in Florida such that the fact that Neiman was predominantly located in Pennsylvania while the negotiations took place is outweighed.  Rather, as Hudson argues, venue is more appropriate in the Southern District of Florida.

In reaching this conclusion, we consider several relevant facts of the dispute. See *Cottman Transmission Sys.*, 36 F.3d at 295 ("In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute.").   The instant case arises due to Hudson's alleged failure to repay a loan.  Their actions in failing to send the payments took place in Florida.

So too did the signing of the Notes.[5]  Furthermore, all face-to-face business

interaction between the parties occurred in Florida, where Neiman keeps a part-

time residence.  Alleged social interaction between the parties also occurred in

Florida.  Hudson consented to both venue and choice-of-law provisions in Florida,

giving rise to the plausible assumption that any suit that might arise would likely

be litigated in Florida.  Further, the choice-of-law provision applying Florida law,

while not an impediment to this Court's resolution of the matters at hand, makes

this dispute better suited to a Florida court more familiar with the application of the

parties' chosen rule of law.  Finally, the property at issue, meaning both the funds

Neiman provided and the investment properties meant to be benefited by the

parties' arrangement, currently exists in Florida.

All of these characteristics arising in the case *sub judice* convince us that the

Southern District of Florida, and not the Middle District of Pennsylvania, is the

more appropriate venue for the case at hand.  The parties also argue over the role

of various other entities in the instant litigation, including Swinton Commons LLC,

Stonehenge Services LLC and Downtown Delray Development LLC, in which

both Neiman and Michael Greenbaum are involved.  Without the benefit of

additional discovery, it is impossible to accurately ascertain which party's

---

[5]      Hudson signed both the October and December Notes in Florida before emailing copies
of both to Neiman.  (Doc. 11-1, ¶ 7).  That Neiman was in Pennsylvania when he received the
email is less consequential, as he could just as easily have been at his Florida residence or
anywhere else when the email was received.

12

allegations are the more valid in regards to the role of these projects in the instant dispute.  Rather, given that *all* of the limited liability companies, investment projects, and real property concerning the various endeavors are located in Florida, as well as the witnesses and documentation relevant to these entities, it is more prudent to transfer the instant matter to the Southern District of Florida, where all parties with the exception of Neiman himself are situated.

### C.   Neiman's Heath

We are not unsympathetic to Neiman's stated health concerns.   According to Neiman's affidavit, he began intensive cardiac rehabilitation nearly two months ago, on August 30, 2016, in Pennsylvania.  (Doc. 11-1, ¶ 20).  This rehabilitation may take upwards of eighteen weeks to complete.  (*Id*.).  However, as Hudson astutely notes, Neiman's health concerns are not wholly appurtenant to the instant decision.  While we have no doubt that the District Court for the Southern District of Florida will strive to conclude this litigation at the earliest possible opportunity, we nonetheless observe that most federal litigation has a duration of several years. We can only presume that Neiman would not need to travel out of Pennsylvania for quite some time.  Further, video depositions and other technological advancements often make such travel less frequent or altogether unnecessary.  We trust that the parties will work amicably to provide any accommodations Neiman may require.

## IV.   CONCLUSION

For the foregoing reasons, we shall deny Hudson's Motion to Dismiss.  We

shall grant Hudson's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).

An appropriate order shall issue.